Council, you may proceed. So this is the companion case to the previous case that you just heard. I'm actually a graduate of that school, but the main issues involved in this case are whether there was a due process violation, whether there was an equal protection violation, and whether these immunities apply. I'll start with the due process test. They're basically claiming that... Could you start with immunity because that's that's pretty much the threshold issue here, is it not? How about starting with stating your name for the record? Oh, Kevin Mosse. We're recording. Sure, I'm sorry. So as to immunities, they're basically claiming that this is all intrinsically related to a judicial role. They're claiming that basically they're acting as, in a judicial role, acting as judges. In a case that was not cited in our brief but is very much on point, which is that you have to look to determine what their role and what they did in this instance. Are they acting as surrogates for judges? In this case, what they were doing... You say you're referring us to a case that's not cited in the briefs? Well, unfortunately, a case came to our attention which we put into our state appeal, which was more on point. File a 28-J letter? No, because that case was prior to... It was not a new case that came up, so it was not applicable under 28-J. But either way, the question is whether what they were doing in this instance is part of the judicial role. What they were doing in this instance was not related to the admission of students to the bar. As we cited in In Reattorney Discipline System, what they do that makes them part of the judicial role is in the admission, discipline, and disbarment of attorneys. What they were doing here was in relation to communications between students of a law school and the law school. How does that have to do with the admissions of the students to the bar? It does not, is what we argue. Let's say they don't have judicial immunity. Okay. Would they be entitled to some other kind of immunity? Well, the question is that we have this agency that apparently is claiming that they have every immunity under the book. So what is the... Okay, let's talk about qualified immunity. Would they have some kind of qualified immunity? Well, in this case, I think the problem is that they're not only promulgating and creating these rules, they're also enforcing and executing these rules. But that wasn't my question. My question is, do they have qualified immunity if they act in good faith and not in violation of any clearly established law and so forth? If they acted in good faith, they may have not. The question is, though, when they act in both a judicial role in certain cases, such as in allowing people to become attorneys, they act in a legislative role when they create rules and promulgate these rules, and they act in an executive role when they enforce these rules. Are they completely surrounded by these immunities and not subject to any kind of checks and balances? Sounds like one of them might stick. You haven't really told me why. Why not? Well, I mean, so what is the basis for a law school to challenge anything that they do? Can they just do whatever they want? And the only possible appeal when you get a notice of non-compliance is to the California Supreme Court. Well, they didn't get a notice of non-compliance, did they? As for this? Yeah. We received a letter. You got a warning that you might get a notice of compliance. Well, but if you trace what would actually happen after that letter literally stated that SEIL was in violation of certain guidelines. It stated that it appears that you were in violation of this guideline. It appears that you're in violation of this guideline, and didn't even give us a chance to respond as to whether we actually were. There's no consequence to it. It's not a notice of compliance. You can throw it, ball it up and throw it away if you want to. No, actually, because the consequence is that they, in that document, the steps that are being taken to ensure the school's compliance with the minute, excuse me, I'm sorry, if the school does not take these actions immediately, which basically was withdraw whatever they had done, a notice of non-compliance will be issued to SEIL. So you're off and running. What's that? And then you're off and running. Then they've filed a formal complaint, and then you've got whatever. Right, but if you look at what happened when they received a notice of non-compliance as to the 40% rule in the companion case, what that SEIL must file a response to this notice within 15 days, and in that response, and I'm quoting, SEIL must document the steps that are being taken to ensure the school's compliance. That's the notice of compliance. That's from a notice of non-compliance. And you didn't get one in this case? Not in this case. Okay, but back to this case, why can't they send you a warning that you are free to ignore or take to heart as you see fit before they file a notice of compliance? But we said in that letter is that you need to send us documented steps complying with this letter. How are we free to ignore that? If we ignored it, they literally stated in that letter, you are going to receive a notice of non-compliance. When we receive that notice of non-compliance, then they will say you need to submit whatever you did to actually comply with this, and we don't ever have a chance to even respond and state whether we believe that we were in non-compliance. We don't have a hearing. We don't get to send a response stating, no, we weren't in non-compliance. And actually, we weren't in non-compliance in one area. They stated that we were in violation of a guideline 2.7, which requires that you give notice to students of these things, of this GBX practice test. We actually did give notice of the GBX practice test in our catalog. So where could we have gone here? We basically had to comply with this letter, and we were stuck doing that. And we didn't have a hearing. We didn't have anything that the school could do. My understanding is that the position of the school is that it cannot require its students to take the decertification test. Is that true? It is generally the auspice of the bar to determine whether people can take a test or not. But that's not really the issue that we're getting at here. The problem is that when we send us ex parte letters saying we're in violation of honesty and communications... But I mean, if you agree that you can't do what you did, what's wrong with them sending a letter reminding you that you can't do what you did? How does that change what you can do? Because we didn't get a chance to respond to say that we didn't do that. But you did do it. No, but we didn't do one of the things that they stated in the letter. They were honest with our students. We put in our catalog that you had to take this test to do it. Whether or not that was proper to require students to do that is kind of a corollary issue. The issue is whether we were honest with our students in telling them about this requirement. What stopped you from writing back and saying you're wrong about this, that, and the other thing in the letter, just like you're telling us now? Well, they literally stated in the letter that they never gave us an with steps taken to remedy this, not respond with saying that we didn't do this. But my understanding of the fact is that you actually did comply and no adverse action was ever taken. We had to comply. Otherwise, we would have been issued another notice of noncompliance. Yet, what was our step? Did we have any process? Did we get to go in front of a hearing? Did we get to respond? Because if we did try to do that, we would have had to just simply comply. So what's the basis? How were you injured? I guess is where I'm going. What is the basis of your substantive claim if we ever get beyond immunity in this case? Right. Well, how were we injured is related to we've been issued this letter, right? And let's say we sell the school, which actually we've been trying to get investors and we've been trying to expand the school. If we do that, we obviously have to disclose that this letter happened and that we've been found in violation of an honesty integrity guideline. That necessarily will devalue the school to some extent. You complied. And so now you're back. I couldn't hear you. I'm sorry. You complied. So now you're back with integrity and honesty compliance. But the problem wasn't whether we complied or not. The problem was whether we had an opportunity to respond as to whether we even actually violated the rule. We should have that right to process. We should have that right to respond to these. Now, I see I have a minute left. I'd like to reserve if that's acceptable. Yes, you may do so, counsel. We'll hear from the bar again. Good morning again, Your Honors. Michael Von Lohenfeldt for the appellees. I confess I'm a little baffled by this. They got a warning letter. They were told to respond and they did. And by the way, their response, which is one of the exhibits to their complaint, most assuredly makes all of the assertions that counsel's making about how they didn't do anything wrong. And they admit that they were not allowed to do the primary thing that they did, which is, and let's make sure we're clear on that, this is not students, it's graduates. They wrote a letter to people who had already received JDs from the school. And in that letter, which we put in its entirety in the brief, it says very clearly, you didn't do something we wanted you to do after you graduated, so we're going to tell the state bar, I'm paraphrasing of course, we're going to tell the state bar you're not eligible to take the bar exam. And it says, that letter's going out today. Those students call the bar, the bar decides, you know what, schools don't get to say who gets to take the bar exam. Okay, of those students who took the bar, what was their passage rate? Of the two or three students? Two or three, is that all it was? I don't know how many students it was, but more importantly, bar exams are a public record. I think there is, doesn't the Daily Journal print it? The pass rates, but not who took it. Oh no, wait, has it changed? No, no, no, your honor, this has always been true. If you take the bar and don't pass, that fact is never published anywhere. The only thing that's published is the list of people who passed. So, I'm trying to answer your question, I don't know that it relates to the merits specifically. No, no, because I just have a very vivid memory of the Daily Journal being posted on the wall the day that they posted it. So, you look for your name? For your name, right, and if your name's not there and you know you took the exam, or someone saw you take the exam, then they know you didn't pass, but strangers never know that you took the exam because the bar does not publish that. But the bar knows? Well, the bar knows. It's secret enough where only particular people at the bar know. I'm not even allowed to know. So, I have no idea what the answer to your question is about this handful of students. What I do know is... How come everybody knew that Kathleen Sullivan didn't pass? Because people knew she took it. I think she made it public that she took it. She did. Well, or someone who knew her and knew she'd taken, I don't know particularly, but that's the only way you'd know. There's actually a fair amount of litigation concerning that, so I know a little bit about it, but that's why. So, what we have here, and I'm flabbergasted to hear them assert this isn't tied to our judicial role in admitting students. Part of the bar's role as an adjunct of the California Supreme Court is to administer the bar exam. We have a letter telling people who signed up for the bar exam, you're not allowed to take the exam and we're going to stop you from doing it. The bar says, don't send those letters and send a corrective letter. How is that not straight in the middle of administering the bar exam? That's exactly what it is. And that's why there's judicial immunity here. If you get to immunity, you know, but I don't know, is immunity the threshold issue or is the fact that nothing happened the threshold issue? You can't sue people for sending you letters. You have no right to a hearing before the government accuses you. Well, it depends what's in the letter, of course. Well, I'm sorry. Yes, Your Honor. Of course. Of course. That's fair enough. Okay, so, wait a second. So, are you claiming, which sort of immunity are you actually, judicial or quasi-judicial? I think there are two. I think judicial is the most apt because what happened here occurred in the context directly of administering the bar examination because it was tied to that July bar. But also, quasi-judicial immunity would apply because this was, in essence, the committee analyzing a dispute between the school and its graduates as to whether they could or couldn't take the exam. So, you know, the cases we've cited would support quasi-judicial immunity there. The district court said judicial immunity and I do think that's the better fit because of the bar's unique role as an adjunct of the Supreme Court in administering the bar exam and admitting lawyers. Suppose this were, we're not talking about the bar exam, suppose we're talking about medical licensing and you're not the state bar, you're whatever they call the agency in California. Right. What immunity would apply? That would be quasi-judicial because it's... So, your only claim to judicial immunity, you're basically doing the same thing as the medical board would, but you've got some kind of connection with the Supreme Court of California. Well, so under the California Constitution, the state bar is a constitutional entity sitting in the judicial branch, so it is, and it acts, and we cited the basic case law for this in our appellee's brief, the bar acts as an administrative adjunct to the Supreme Court. It's a bit of a unique role  because the bar is essentially acting in a way that would be analogous to this court's clerk. It's an administrative adjunct to the California Supreme Court in administering the exam. Technically speaking, it's the court. I'm trying to noodle out why we would treat the state bar differently when it's wearing its bar exam hat than we would other agencies and other licensing functions. Because it's a judicial branch entity. Because someone said so. I mean, it's just... Well, because the California Constitution says so, and because one and a half centuries of California law says so, and because the function of the state bar as it relates to admissions. We have what's called an integrated bar, so they're the official functions of the bar as they relate to admissions and discipline, and then there are the sort of social or professional functions of the bar as it relates to sections and things like that. The official court-related, admission-related functions of the bar are taken as judicial acts, essentially by the Supreme Court. Would there be any other agency in California that would get judicial immunity like this for its licensing exam functions? I'm not aware of any. I think sort of more importantly, because the quasi-judicial immunity would apply anyway, this is the type of evaluative procedure that that would apply to. And sort of most importantly, backing all the way up, nothing happened here. They got a letter accusing them of something that they admit they did, except one little part of it. They stopped doing the thing they were told to stop doing, and nothing else happened. If they had chosen to say, we're not going to comply with your letter, we had every right to do what we do, they would have gotten a notice of non-compliance, and then they would have had all of the procedures that the rules submit for that. There's no due process right to a pre-notice notice. There's no due process right that says the government can't accuse me of anything in an ex-party meeting, whatever that even means in this context. They just don't have any such right. And nothing happened here, except that they got this letter, and instead of being quiet about it, turned around and wrote the legislature and wrote the governor and wrote the state bar and filed this lawsuit against 26 people, because this letter got sent telling them to stop doing something they admit they had no right to do. That's what this case is about. Unless the panel has questions, I don't think. No further questions. Thank you. Thank you, Your Honor. Mr. Mosseth, you have some reserve time. Yes, he points – I have to state that I think he's missing the point still, in that it's not about whether we had the right to do what we did or whether we stopped what we did. The point is that we in no manner did we have or would we have the right to any kind of process in this matter. I think that's the point that needs to be really examined here. But the process hadn't really begun. Well, even if it had gone to – well, the process was begun. We received this letter, and we were told in that letter specifically that we had to remedy whatever we did, and there was no chance to respond to that letter. That's where I'm having difficulty. Why can't you respond? It said you had to respond with steps remedying your actions. It didn't say you could respond. It did say, stay apart, I respectfully disagree, this is what we think we can do, and we hope that you will go along with it. Well, it said in that letter that if we didn't respond with what we did to remedy this issue, then they would issue a notice of noncompliance. Where's our response ability there? And when they issue the notice of noncompliance, as you can see with the notice of noncompliance issued on the 40 percent rule, as I stated earlier, there's still no hearing. There's still no notice, no opportunity to respond. You asked earlier whether these students that received these letters passed the bar. Absolutely no, they did not. I thought I should mention that. Other than that, I think I can rest on that. Very well. Thank you, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Silverman, Wardlaw